```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


TREVOR STANDIFORD,

          Plaintiff,

v.                                    Civil Action No. 5:10CV24
                                                        (STAMP)
MAURO HUMBERTO RODRIGUEZ-HERNANDEZ[1] and
WATER PROVIDERS LIMITED d/b/a SWEET H2O,

          Defendants.
```

### MEMORANDUM OPINION AND ORDER
### DISMISSING ACTION AS TO DEFENDANT
### MAURO HUMBERTO RODRIGUEZ-HERNANDEZ,
### GRANTING WATER PROVIDERS, LTD. D/B/A SWEET H2O's
### MOTION FOR SUMMARY JUDGMENT AND
### DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I.  Procedural History

The above-styled civil action arises out of a two-vehicle automobile accident that occurred on November 16, 2009 in New Martinsville, West Virginia.  Defendant Mauro Humberto Rodriguez-Hernandez ("Rodriguez-Hernandez"), an employee of Water Providers Limited d/b/a Sweet H2O ("Water Providers") who was driving a Water Providers truck, collided with the plaintiff's vehicle.[2]  The

---

[1] Mauro Humberto Rodriguez-Hernandez is a named defendant in both this action, as well as Civil Action No. 5:10CV25.  However, the plaintiffs have failed to effectuate service of the complaint on him.  Count I of the amended complaint alleges a claim for negligence against Rodriguez-Hernandez, which this opinion does not address, as Rodriguez-Hernandez was never served.  Because Rodriguez-Hernandez was never served, the action against him is dismissed pursuant to Rule 4 of the Federal Rules of Civil Procedure.

[2] The owners and passengers of the vehicle driven by Trevor Standiford also brought suit against Rodriguez-Hernandez and Water Providers.  (Civil Action No. 5:10CV25.)  These cases were consolidated for discovery purposes and dispositive motions per an

plaintiff and his passenger, Alyssa Warren, sustained significant injuries.

Following the accident, the plaintiff filed a complaint in the Circuit Court of Wetzel County, West Virginia alleging claims of negligence, negligent entrustment, respondeat superior, and the tort of outrage.  This case was subsequently removed by the defendant, Water Providers, to this Court.

On March 16, 2010, defendant State Farm Fire & Casualty Company ("State Farm"), the plaintiff's purported underinsured motorist insurer, filed a motion to dismiss the plaintiff's request for injunctive relief contained in the ad damnum clause of his complaint.[3]  After that motion had been fully briefed, this Court entered a memorandum opinion and order granting as framed the motion to dismiss the request for injunctive relief of State Farm. Specifically, the Court granted the motion to dismiss the request for injunctive relief because the plaintiff had failed to plead a proper cause of action.  In addition to analyzing the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the

---

order of this Court on July 1, 2010.  Because the same dispositive motions were filed in both cases, this opinion will, at times, reference all plaintiffs, not just Trevor Standiford.

[3]In the ad damnum clause of the complaint, the plaintiff requested that the Court issue an order prohibiting State Farm and other relevant insurance companies involved in the claim from disseminating the plaintiff's information obtained during the course of litigation to third parties and indexing bureaus. (Compl. 10.)

Court also analyzed the complaint under Rule 65, finding that the issuance of an injunction was unwarranted.

On March 25, 2011, the plaintiff filed a motion for leave to amend the complaint, to which Water Providers filed a response in opposition. After a hearing on the motion to amend the complaint, this Court issued an order confirming the pronounced order of the Court granting as framed the defendant's motion to modify the scheduling order and granting the motion for leave to amend the complaint. Subsequently, the plaintiff filed an amended complaint which adds a cause of action for negligent hiring, a cause of action for property damage, and removes State Farm as a defendant. Later, the plaintiff filed another motion for leave to amend the complaint to add additional parties. This Court denied the plaintiff's request to join additional parties in a memorandum opinion and order dated August 5, 2011.

On October 10, 2011, Water Providers filed a motion for summary judgment. One week later, the plaintiff filed a motion for summary judgment. Both motions have been fully briefed and are ripe for review. For the reasons set forth below, this Court finds that Water Providers' motion for summary judgment must be granted, and the plaintiff's motion for summary judgment must be denied.[4]

---

[4]On January 13, 2012, the undersigned judge sent a letter to counsel setting forth its tentative rulings and vacating the trials in both this case and Civil Action No. 5:10CV25. This memorandum sets forth those rulings in greater detail.

## II.   Facts[5]

On September 21, 2009, Rodriguez-Hernandez completed an application for employment with Water Providers, in which he provided an address in Denton, Texas, and stated that he had a valid driver's license issued by the state of New Mexico.  On September 23, 2009, Water Providers ascertained that Rodriguez-Hernandez did not possess a driver's license, and that the address that appeared on his New Mexico identification card was different from the one he provided on his employment application.  There is no evidence that Water Providers took any action to verify Rodriguez-Hernandez's legal status.

Upon hiring Rodriguez-Hernandez, Water Providers provided him with an expense card and sent him to live and work in Wetzel County, West Virginia.  Water Providers did not assign a specific employee to transport Rodriguez-Hernandez to and from work while he was in West Virginia.  Instead, Rodriguez-Hernandez was expected to share company vehicles with other employees.  Rodriguez-Hernandez was specifically told by Alex Morgan, the Pennsylvania Operations Manager, that he was not permitted to drive any Water Providers' vehicles.

---

[5]On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party.  Fed. R. Civ. P. 56(c).  In this case, both parties have filed motions for summary judgment.  Therefore, for the purpose of deciding these motions, this Court considers the facts as presented by both the plaintiff and the defendant.

On November 16, 2009, without permission from Water Providers or any supervisor, Rodriguez-Hernandez borrowed a 2008 Chevrolet 2500 commercial vehicle truck from another employee after the work day had ended in order to drive to the Laundromat. While Rodriguez-Hernandez was doing his laundry, he drove to get a snack at a nearby convenience store. On his way back to the Laundromat, on Route 2 in New Martinsville, West Virginia, Rodriguez-Hernandez made a sudden left hand turn across multiple lanes of traffic, causing a collision with the 1995 Toyota Land Cruiser driven by the plaintiff.

New Martinsville Police Officer Friend V. Estep, responded to the accident and charged Rodriguez-Hernandez with failure to yield, making an improper turn, and failure to maintain control of his vehicle. Officer Estep determined that Rodriguez-Hernandez was an illegal alien with no valid driver's license. After the accident, Rodriguez-Hernandez was deported.

### III.  Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>     (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
>     (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718-19 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.  Discussion

A.  Water Providers' Motion for Summary Judgment

In its motion for summary judgment, Water Providers argues: (1) It is not liable for the accident because it expressly forbid Rodriguez-Hernandez from using its vehicle and never authorized him to drive the truck on the day of the accident; (2) It is not vicariously liable for the accident because Rodriguez-Hernandez took the truck after being told that he was not permitted to drive any company vehicles, to perform a personal errand, after the work day had ended; (3) The plaintiffs' claim for negligent hiring fails because there are no facts that Water Providers owed the plaintiffs any duty with regard to hiring Rodriguez-Hernandez; (4) There is no evidence to support the plaintiffs' claims for punitive damages because there is no evidence that Water Providers' actions were

willful, wanton, reckless, or committed with criminal indifference; and (5) The plaintiffs failed to adduce any evidence to support a claim under the tort of outrage because there is no evidence that Water Providers' actions "exceeded the bounds of decency," or that it acted intentionally or recklessly to inflict emotional distress on the plaintiffs.

In his response in opposition, the plaintiff argues that the defendant's motion for summary judgment must be denied because: (1) The vehicle collision was an ordinary and natural incident or logical result of employment; (2) Water Providers entrusted its vehicle to an employee with no valid driver's license; (3) Water Providers hired an illegal alien, placed that employee in the state of West Virginia, and entrusted its vehicle to that illegal alien employee which resulted in injuries to the plaintiff; (4) Water Providers failed to exercise reasonable and prudent hiring practices which lead to the employment Rodriguez-Hernandez; and (5) Water Providers must answer in punitive damages to prevent repetitious conduct that causes injuries to the citizens of West Virginia.

In its reply, Water Providers reasserts its previous arguments and also contends that there is no dispute as to the fact that Water Providers did not entrust its vehicle to Rodriguez-Hernandez.

B.    Plaintiff's Motion for Summary Judgment

Predictably, the plaintiff's motion for summary judgment presents arguments similar to those stated in his response to Water

8

Providers' motion for summary judgment. The plaintiff contends that Water Providers should be held vicariously liable for the acts of its employee, Rodriguez-Hernandez, under the doctrine of respondeat superior. Further, the plaintiff asserts that the public policy of the state of West Virginia mandates that foreign companies that hire illegal aliens must be held liable when that illegal employee causes harm to West Virginia citizens.

In response, Water Providers argues that it is not vicariously liable for the accident because Rodriguez-Hernandez took the truck after being told that he was not permitted to drive any company vehicles, to perform a personal errand after the work day had ended. Water Providers further argues that Officer Estep's statements regarding the general practices of work crews in West Virginia are not relevant to this accident and should be disregarded. Finally, Water Providers contends that there is no public policy basis to impose vicarious liability upon it because Rodriguez-Hernandez was clearly outside the course and scope of employment at the time of the accident.

In his reply, the plaintiff reasserts that Water Providers is vicariously liable to him because it created and controlled the circumstances that led to its employee causing an accident. The plaintiff also reiterates that public policy supports the application of the doctrine of respondeat superior in this case. Finally, the plaintiff counters that the testimony of Officer Estep should be considered in determining the facts at issue.

C.   Respondeat Superior

The question of whether Water Providers can be held responsible for the negligent acts of Rodriguez-Hernandez hinges upon whether, at the time of the accident, Rodriguez-Hernandez was acting within the scope of his employment. "The fundamental rule in West Virginia is that if it can be shown that an individual is an agent and if he is acting within the scope of his employment when he commits a tort, then the principal is liable for the tort as well as the agent." Barath v. Performance Trucking Co., Inc., 424 S.E.2d 602, 605 (W. Va. 1992); see also Griffith v. George Transfer & Rigging, Inc., 201 S.E.2d 281, 287 (W. Va. 1973) ("The universally recognized rule is that an employer is liable to a third person for any injury to his person or property which results proximately from tortious conduct of an employee acting within the scope of his employment.").

"'Scope of employment' is a relative term and requires a consideration of surrounding circumstances including the character of the employment, the nature of the wrongful deed, the time and place of its commission and the purpose of the act." Griffith, 201 S.E.2d at 288. West Virginia courts have held that an employee is not within the scope of his employment when he is on a "frolic of his own." Jenkins v. Spitler, 199 S.E. 368, 370 (W. Va. 1938). Specifically, "the owner of an automobile is not liable for injuries caused by a servant, while operating the car on his own business or pleasure." Id. (internal quotations omitted).

The plaintiff argues that Water Providers must be held liable under the doctrine of respondeat superior because it hired an illegal alien in order to profit from the West Virginia Marcellus shale oil and gas industry.  According to the plaintiff, Water Providers required Rodriguez-Hernandez to be a transient resident of West Virginia, but failed to assign him a driver or notify other employees on the work crew that Rodriguez-Hernandez had no driver's license.  While all of these facts may be true, they do not prove that Rodriguez-Hernandez was in the scope of employment at the time of the accident.  A review of the entire record reveals that at the time of the accident, Rodriguez-Hernandez was on a personal errand.

On November 16, 2009, the day of the accident, Rodriguez-Hernandez's shift ended around 6:00 p.m. (Morgan Aff. ¶ 4.)  After work, Rodriguez-Hernandez took the Water Providers truck without permission to use for his own personal errand -- doing his laundry and purchasing a snack.  (Morgan Aff. ¶ 5.) (Estep Dep. 39:4-13, April 28, 2011.)  The plaintiff has failed to produce any evidence to show that Rodriguez-Hernandez was acting within the scope of his employment when he drove from the gas station back to the Laundromat.  The plaintiff's contention that Water Providers negligently failed to ensure transportation for Rodriguez-Hernandez is not enough to hold Water Providers vicariously liable for Rodriguez-Hernandez's negligent acts that occurred while he was on a personal errand.

The mere fact that Water Providers hired an illegal alien and placed him in West Virginia to benefit the company cannot, by itself, support a finding that Water Providers is liable for the harm caused by Rodriguez-Hernandez. As explained above, the key inquiry is whether Rodriguez-Hernandez was acting within the scope of his employment. The plaintiff's public policy argument does not answer that question. Similarly, the testimony of Officer Estep is not relevant to a determination of whether Rodriguez-Hernandez was in acting in the scope of his employment at the time of the accident. Officer Estep discusses what he believes to be the general practices of work crews in West Virginia, but this testimony is not specific to the practices of Water Providers or the individuals involved in this accident. Thus, for these reasons, Water Providers is entitled to summary judgment on the claim of vicarious liability under the doctrine of respondeat superior.

D.  Negligent Entrustment

A negligent entrustment cause of action exists in West Virginia as recognized in Syllabus Points 11 and 12 of Payne v. Kinder:

> 11. Liability for the negligence of an incompetent driver to whom an automobile is entrusted does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle, with permission to operate it, to a person whose incompetency, inexperience, or recklessness is known or should have been known by the owner.
>
> 12. An owner who entrusts his motor vehicle to a person whom he knows, or from the circumstances is charged with

> knowing, to be incompetent or unfit to drive it is liable for injury inflicted which results from the use of the automobile by the driver if the injury was proximately caused by the disqualification, incompetency, inexperience, intoxication or recklessness of the driver.

Payne v. Kinder, 127 S.E.2d 726 (W. Va. 1962). "[T]he critical element of a negligent entrustment cause of action is the initial improper loaning of the vehicle-improper in the sense that it is given to a person who is known to be likely to cause an unreasonable risk of harm to others." Huggins v. Tri-County Bonding Co., 337 S.E.2d 12, 17 (W. Va. 1985).

In this case, the plaintiff's claim for negligent entrustment fails because there is no evidence that Water Providers improperly loaned the vehicle to Rodriguez-Hernandez. In fact, there is no evidence that Water Providers even knew that Rodriguez-Hernandez was driving on the day of the accident. Rather, the only evidence that appears in the record is that Rodriguez-Hernandez borrowed the truck without authorization from any supervisor, at the end of the work day, despite having been told that he was not authorized to drive any company vehicle. (Morgan Aff. ¶¶ 3, 5) (Slavings Aff. ¶ 4). Because the plaintiff has not presented facts in support of the element of entrustment, the negligent entrustment claim must fail.

E.  Tort of Outrage

In his amended complaint, the plaintiff argues that Water Providers' conduct, which included hiring an illegal alien without a driver's license and entrusting him to operate the company's

commercial vehicle, was extreme, outrageous, and exceeded all bounds of decency. The defendant counters that there is no evidence that its actions "exceeded all bounds of decency" or that it acted intentionally or recklessly to inflict emotional distress on the plaintiff.

The Supreme Court of Appeals of West Virginia has explained that "the tort of outrage is merely an extension of the right to recover damages for emotional distress into areas involving nontraditional intentional torts." Harless v. First Nat. Bank in Fairmont, 289 S.E.2d 692, 694 (W. Va. 1982). The standard for liability is high and requires "extreme and outrageous conduct [that] intentionally or recklessly causes severe emotional distress." Id. at syl. pt. 6. To prevail on a claim for intentional or reckless infliction of emotional distress, the plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Travis v. Alcon Laboratories, Inc., 504 S.E.2d 419, 425 (W. Va. 1998).

This Court finds that the plaintiff has failed to offer any evidence to support the requisite elements to prove liability under the tort of outrage. As discussed above, Water Providers did not

negligently entrust its vehicle to Rodriguez-Hernandez. Rather, Water Providers instructed Rodriguez-Hernandez not to drive any company vehicles. Simply placing a transient worker in the state of West Virginia without assigned transportation does not amount to extreme and outrageous conduct, as the plaintiff suggests. Further, the plaintiff has failed to produce any evidence that he has suffered severe emotional distress -- he simply claims that the pain from the accident brought on depression for which he sought help from a doctor at Bailey Behavioral Health. However, the pain of his injuries and the disruption of his senior year of high school does not amount to "emotional distress . . . so severe that no reasonable person could be expected to endure it." Id. After all, "[c]omplete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is part of the price of living among people." Id. at 430 (quoting Restatement of Torts (Second), § 46). Thus, Water Providers is entitled to summary judgment as to the plaintiff's claim for the tort of outrage.

F.   Negligent Hiring and Retention

Count V of the plaintiff's amended complaint sets forth a claim of negligent hiring and retention. According to the plaintiff, Water Providers had a duty of reasonable care to hire employees who were fit and capable of performing the responsibilities assigned by Water Providers and who would not pose a possible risk of harm or injury to others. The plaintiff further

15

argues that Water Providers had a duty to hire employees who were authorized for employment in the United States. Finally, the plaintiff contends that Water Providers had a duty to conduct a reasonable investigation into the background of Rodriguez-Hernandez. In response, the defendant argues that it owed no duty to the plaintiff with regard to the hiring of Rodriguez-Hernandez. This Court agrees.

In Evans v. Sanchez Rubio, No. 2:06-0995, 2007 WL 712291 (S.D. W. Va. Mar. 6, 2007), a case cited by the defendant, the United States District Court for the Southern District of West Virginia dismissed the plaintiff's suit seeking damages based on negligent hiring as a result of a motor vehicle accident involving a vehicle allegedly driven by an illegal immigrant which collided with the plaintiff's vehicle during a drag race that occurred outside the scope of employment. Evans, 2007 WL 712291, at *3. As the Evans court acknowledged, the West Virginia Supreme Court of Appeals has recognized a cause of action based upon a claim of negligent hiring. See McCormick v. W. Va. Dep't of Pub. Safety, 503 S.E.2d 502, 506 (W. Va. 1998) (per curiam). To determine whether an employer should be held liable for negligent hiring, courts apply the following test:

> [W]hen the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

Id. (quoting State ex rel. W. Va. State Police v. Taylor, 499 S.E.2d 283, 289 n.7 (W. Va. 1997)).  In explaining why there was no basis for liability on the negligent hiring claim, the Evans court stated, "there must be at least some connection between the injured plaintiff and the employment in order for the employer to owe a duty to the plaintiff."  Evans, 2007 WL 712291, at *2.  "A connection between the plaintiff and the employment is required because the duty the employer owes to members of the public stems from the benefits the employer receives from having customers."  Id.  Importantly, "while an employer owes a duty to the public to investigate the driving record of employees hired as drivers, it owes no such duty when employees are hired to perform other duties."  Id. at *3.

In this case, Water Providers did not hire Rodriguez-Hernandez as a driver -- he was hired as a laborer and told that he could not drive any company vehicles.  Therefore, Water Providers did not owe any duty to investigate Rodriguez-Hernandez's driving record.  Moreover, there is no evidence that Water Providers knew that Rodriguez-Hernandez was not authorized to work in the United States at the time he was hired.  Water Providers is entitled to summary judgment as to the plaintiff's negligent hiring claim.

G.   Punitive Damages

The plaintiff argues that Water Providers must answer in punitive damages because its actions were conducted with malice, oppression, or wanton, willful, or reckless conduct, or criminal

indifference to civil obligations. This Court finds, however, that the record contains no evidence that Water Providers' actions rose to the level of extreme and outrageous conduct necessary to merit an award of punitive damages. Thus, Water Providers is entitled to summary judgment on the plaintiff's claim for punitive damages.

## V. Conclusion

For the reasons stated above, Water Providers' motion for summary judgment is GRANTED (ECF No. 68) and the plaintiff's motion for summary judgment is DENIED (ECF No. 75). The pending motions in limine are DENIED AS MOOT (ECF Nos. 89, 92, 94, 96, 98, 100, 102, 104, 106). The action against defendant Mauro Humberto Rodriguez-Hernandez is DISMISSED. It is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: January 26, 2012

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE